UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FOREST CONAN KINGCADE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TIM TROWBRIDGE, et al., )<br>)<br>Defendants. ) | Case No. 1:15 CV 24 ACL |

**MEMORANDUM AND ORDER**

Plaintiff Forest Conan Kingcade filed this action against Tim Trowbridge, Phillip Caldwell, Mark Dennis, Allan Campbell, Brandon Moore, and Stephen Gregory alleging violations of his constitutional rights resulting from his arrest. Kingcade asserts claims under 42 U.S.C. § 1983 for excessive force, deliberate indifference to medical needs, failure to intervene, and illegal search and seizure. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. *See* 28 U.S.C. § 636(c).

This matter is before the Court on the Motion of the aforementioned Defendants for Summary Judgment. Kingcade has responded in opposition, and the issues are fully briefed. Also pending are Kingcade's Motion to Appoint Counsel (Doc. 58) and Motion to Subpoena (Doc. 59) X-Rays from the Farmington Correctional Center.

**I.  Background**

Plaintiff Forest Conan Kingcade, currently an inmate at Farmington Correctional

Center, asserts claims against the defendant law enforcement officers for excessive use of force, deliberate indifference to serious medical needs, failure to intervene, and illegal search and seizure.

In his Second Amended Complaint, Kingcade alleges that on August 7, 2014, Defendants Moore, Trowbridge, Campbell, Gregory, Caldwell, and Dennis entered his home without a search warrant in response to a shoplifting incident at the Town and Country Grocery Store in Kennett, Missouri. (Doc. 28 at 5.) Kingcade claims that he was ordered to the ground and that he complied with this directive. *Id.* Kingcade states that, after he was handcuffed, Moore shoved him to the floor, and Dennis used his taser on the lower part of his thigh for a period of sixty seconds or more. *Id.* at 6. Kingcade states that Trowbridge and Caldwell stood by and watched the incident. *Id.*

Kingcade alleges that he requested medical assistance because the taser prongs were still in his thigh, he received lacerations from the prongs, and he had burns on his wrists from the handcuffs. *Id.* He contends that he was denied access to medical care. *Id.* Kingcade alleges that, upon arrival at the Dunklin County Jail, Campbell tased him while he was securely detained. *Id.*

Defendants filed a Motion for Summary Judgment, in which they argue they are entitled to judgment on all of Kingcade's claims.

**II.     Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving

party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co.*., 475 U.S. at 587).

### III. Facts[1]

On January 16, 2015, Kingcade pled guilty to the class D felony of stealing in violation of Mo. Rev. Stat. § 570.030, for stealing pork steaks from the Country Mart in Kennett, Missouri, on August 7, 2014. Kingcade also pled guilty to the class D felony of resisting arrest in violation of Mo. Rev. Stat. § 575.150.

On August 7, 2014, customer Jerry Snipes and employee Brooke Harris witnessed a man putting meat in his clothes at the Country Mart in Kennett. Harris saw the man exit the store without paying and get into a Monte Carlo. She reported the incident to her boss, Randy Jackson.

---

[1]The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in his response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

Jackson approached the Monte Carlo in the Country Mart parking lot and the suspect drove off. A small child was observed in the Monte Carlo. Jackson took down the Monte Carlo's license plate number and followed the Monte Carlo to the general area of Kingcade's residence before losing the suspect. Jackson reported this information to the police. The plate number reported by Jackson matched a vehicle owned by Kingcade. Defendant Brandon Moore learned the address of the registered owner, Kingcade, was 204 Leila Drive ("residence") and Defendant Moore went to that address. Other officers responded to the scene, including: Defendant Dennis who learned that Kingcade was wanted on a warrant for a parole violation.

Defendant Moore made contact with Kingcade's girlfriend, Jessica Gordon, at the residence. Kingcade was living at the residence with Jessica Gordon and her two children at the time of the incident. According to Defendant Moore, Gordon gave the Defendants consent to search the residence for Kingcade. Kingcade disputes that Gordon consented to the search. Defendant Moore discovered the Monte Carlo driven by Kingcade was in the garage.

Kingcade testified that he drove to the Country Mart in a 2006 Monte Carlo with one of Jessica Gordon's children. Kingcade stated that, when he returned from the Country Mart, he got into bed in the back bedroom wearing a t-shirt and a pair of boxers. Kingcade testified that, at some point, Gordon told him that the police were in the garage and in the house. Gordon and her children went out of the house. Kingcade came out of the bedroom, still wearing the t-shirt and boxers, to find six officers and a K-9 dog.

The parties' accounts of what happened next diverge. Kingcade claims that Defendants used force to put him to the floor at the residence while he was handcuffed, and Defendant Dennis then activated his taser, when Kingcade was not resisting arrest in any way and was not a threat.

Defendants claim that Kingcade resisted arrest by threatening them, and that use of force was therefore reasonable.

As Kingcade was being escorted from his residence to a patrol car, he told Defendants Trowbridge and Caldwell that he needed medical attention. Plaintiff stated that he had cuts on both of his wrists from the handcuffs that had tightened when Moore threw him to the floor, and his thigh was bleeding where the taser prongs hit him. Defendant Campbell drove Kingcade to the Dunklin County jail rather than the hospital. The trip from Kingcade's residence to the jail took approximately five minutes.

When they arrived at the Dunklin County jail, Kingcade claims that two deputies had to get him out of the police car and carry him into the jail because he was unable to walk on his own due to still being in a daze after being tased. Kingcade alleges that he was seated on his buttocks, in handcuffs, with his head down, when Defendant Campbell walked up and used the taser on him in "dry stun" mode. Kingcade denies struggling with, swearing at, or threatening the officers prior to being tased. Kingcade received medical attention from a nurse at the jail following these incidents.

### IV. Discussion

#### A. Excessive Use of Force

Kingcade alleges three instances of excessive use of force associated with his arrest: (1) when Defendant Moore threw Kingcade to the floor of his residence while Kingcade was handcuffed; (2) when Defendant Dennis tased Kingcade while he was on the floor of the residence; and (3) when Defendant Campbell tased Plaintiff in the holding cell at the Dunklin County jail. (Doc. 28 at p. 4-5; Doc. 51-1 at 51-53.)

Defendants argue that Kingcade's excessive force claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

In order to establish a cognizable Section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 49 (1988). A claim that a law enforcement officer has used excessive force during the course of an arrest or other "seizure" of a citizen is considered to be an alleged violation of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 388 (1989). Put alternatively, the right to be free from excessive force in the course of an arrest or detention by a law enforcement official is an established right under the Fourth Amendment's prohibition against unreasonable seizure of the person. *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007). The key determination is reasonableness. To that end, "the force employed by an officer is not excessive, and thus not violative of the Fourth Amendment, if it was objectively reasonable under the particular circumstances." *Cook v. City of Bella Villa,* 582 F.3d 840, 849 (8th Cir. 2009). In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment," a court must engage in "a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.* (*quoting, in part, Graham,* 490 U.S. at 396). Such an analysis requires a court to evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.*

Defendants argue that they are entitled to judgment as a matter of law as to Kingcade's excessive use of force claims because Kingcade pled guilty to the crime of resisting arrest in

violation of Mo. Rev. Stat. § 575.150, based on his conduct during the incident. Defendants contend that Kingcade's excessive force claims are barred by the doctrine enunciated in *Heck*.

A claim for damages related to a conviction or sentence that has not been invalidated is not cognizable under § 1983. *Heck*, 512 U.S. at 487. As such, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* Conversely, if the court determines that the plaintiff's action would not necessarily invalidate the judgment against the plaintiff, the action should be allowed to proceed. *Id.*

Justice Scalia, writing for the majority explained, "[w]e think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 486. The *Heck* majority reasoned that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.* at 482 (*quoting Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973)).

The resisting arrest statute provides that:

> A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or
>
> (2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

Mo. Rev. Stat. § 575.150.1. The law broadly applies to "arrests, stops, or detentions, with or without warrants ..., for any crime, infraction, or ordinance violation." Mo. Rev. Stat. § 575.150.2(1)-(2). The Amended Information to which Kingcade pled guilty closely tracked the statutory language:

> [O]n or about August 7, 2014, in the county of Dunklin, State of Missouri, Alan Campbell a law enforcement officer, was attempting to arrest defendant for the felony stealing and resisted that arrest by threatening physical force or violence.

(Doc. 51-3 at 9.)

Kingcade admits that he pled guilty to resisting arrest by threatening physical force, but argues that he never threatened Campbell. (Doc. 56-1 at 4.) Kingcade states that "[t]he only reason I pleaded guilty is because of my criminal history. I did not want[] to take that chance of going to trial, because my Public Defender Ms. Wennell told me, that the prosecuting attorney was going to task the Court for [an] extended term…" *Id.*

Kingcade's statements in response to the Summary Judgment Motion on this point equate to a challenge of the validity of his conviction in that proving his excessive force claim would require invalidating the offense of which he has been convicted. Kingcade's argument in support of his excessive force claim is that he was "secured and complying" at his residence when he was brought to the floor by Moore and tased by Dennis, and that he did not resist Campbell and "never threatened him." (Doc. 56-1 at 2, 4.) These statements contradict the facts set forth in the Amended Information, to which Kingcade pled guilty. Kingcade also directly challenges his

conviction, arguing that he only pled guilty on advice of counsel to avoid a harsher punishment. Under these facts, the Court concludes that the merits of Kingcade's excessive force claim "would necessarily imply the invalidity of his conviction" for resisting arrest under Mo. Rev. Stat. § 575.150. Defendants' Motion for Summary Judgment will be granted as to Kingcade's excessive force claim. Because Kingcade's excessive force claim is barred by *Heck*, the Court will not address Defendants' additional arguments based on collateral estoppel and qualified immunity.

### B. Deliberate Indifference to Medical Needs

Kingcade alleges that he requested medical assistance on two separate occasions. First, Kingcade claims that he asked Defendants Trowbridge and Caldwell to take him to the hospital as he was being escorted from his residence to the patrol vehicle for treatment of lacerations on his wrists from the handcuffs and the injury to his thigh from the taser. Kingcade also alleges that he told Defendant Campbell he could not move and that he needed to be taken to the hospital for medical treatment when he arrived in the back of the patrol vehicle at the Dunklin County jail. Kingcade states that he was denied medical treatment on both occasions.

Defendants argue that they are entitled to judgment as a matter of law on this claim because Kingcade cannot prove that he had an objectively serious medical need, or that Defendants Trowbridge, Caldwell, or Campbell deliberately disregarded this need.

As a pretrial detainee, Kingcade's right to medical care arises under the Due Process Clause of the Fourteenth Amendment, but in evaluating such claims, the Eighth Circuit applies "the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." *Langford v. Norris*, 614 F.3d 445, 460

(8th Cir. 2010).  "Deliberate indifference constitutes more than mere negligence."  *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015).  "The test is akin to the criminal rule of recklessness."  *Id.*  An inmate's mere disagreement with a prescribed course of treatment is insufficient to establish deliberate indifference.  *Langford*, 614 F.3d at 460.  "[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."  *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (citation omitted).  "[I]n cases where some medical care is provided, a plaintiff is entitled to prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference."  *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

In this case, Kingcade fails to demonstrate either prong of his deliberate indifference to medical needs claim.  Kingcade alleges that he received "gashes and lacerations" to his wrists, and "bodily harm" and bleeding to his thigh from the taser prongs.  (Doc. 56 at 3.)  Kingcade also contends that he continues to suffer from "neck, shoulders and upper back pain" and "mental anguish issues" due to the incident.  *Id.*

The photographs of Kingcade's wrists taken by Deputy Weismann on the same day of the incident at the jail do not reveal any discernible injury.  (Doc. 51-1, Exs. A., B.)  Kingcade testified that the black mark visible on his left arm is a tattoo and not a bruise.  (Doc. 51-1, Ex. 1, at 32.)  Kingcade testified that these photographs show red marks on his lower arms that "look like bruises."  *Id.*  The photographs do reveal some redness on Kingcade's lower arms, but no lacerations or other injuries.  Photographs taken six days later by Deputy Presson reveal marks on Kingcade's wrists.  (Doc. 51-1, Ex. D.)  Kingcade testified that these marks were caused by the handcuffs tightening on his wrists when he was thrown to the ground by Defendant Moore.  (Doc.

51-1, Ex. 1 at 34.)   Kingcade has not submitted any evidence of his alleged left thigh injury.   He testified that he did not ask Wiseman or Preston to photograph this alleged injury.   *Id.* at 35.   There is no record of Kingcade ever being diagnosed with lacerations on his wrists or thigh, or with any impairment of his neck, shoulders, or back, resulting from his arrest.

In his Response in opposition to Defendants' Motion for Summary Judgment, Kingcade claims that he continues to suffer neck, shoulder, and upper back pain resulting from the incident. During his deposition, however, Kingcade testified that did not have any problems with his neck, shoulders, or upper back at that time.   *Id.* at 66-67.   In addition, during Kingcade's intake at the Eastern Reception, Diagnostic, and Correctional Center at Bonne Terre on October 24, 2014, he reported that he did not have an arrest injury and did not otherwise complain of medical problems associated with his arrest.   (Doc. 51-4 at 10.)   Furthermore, Kingcade was seen by various Missouri Department of Corrections medical professionals on approximately one dozen occasions for a variety of issues (*i.e.*, routine testing, minor medical issues, and vision problems) **between October 24, 2014 and May 19, 2015**; he never mentioned any neck or back pain during those examinations.   *See* Doc. 46 at 11, 15, 16, 18, 19-21, 23, 25, 26.   The first time Kingcade reported back or neck pain to a Missouri Department of Corrections medical professional was **July 21, 2015**, nearly one year after his August 7, 2014 arrest.   As such, Kingcade's statement that he currently suffers from problems with his neck, shoulders, and upper back resulting from his arrest is refuted by the record, including his own deposition testimony, and does not create a genuine issue of material fact regarding the presence of a serious medical condition.   Kingcade has failed to show he suffered from an objectively serious medical need.

Further, Kingcade has not demonstrated that Defendants were indifferent to his serious medical needs.   Kingcade admitted that he received medical treatment from a nurse at the jail on

the same day of his arrest. (Doc. 51-1 at 56.) Kingcade stated that the nurse gave him aspirin. *Id.* Even if the alleged injuries to his wrists and thigh constituted a serious medical need, Defendants did not disregard Kingcade's needs as he received medical treatment from a nurse on the same day he received the injuries. Kingcade argues that he should have been taken to the hospital rather than the jail after his arrest. Due to the minor injuries, if any, Kingcade received resulting from his arrest, he has not established that the care he received so deviated from professional standards that it amounted to deliberate indifference. His mere disagreement with the course of treatment provided is insufficient to establish deliberate indifference.

Thus, Defendants' Motion for Summary Judgment will be granted as to Kingcade's deliberate indifference to serious medical needs claim.

### C. Failure to Intervene

Kingcade argues that Defendants Trowbridge, Caldwell, Campbell, Dennis, and Gregory are liable for failing to intervene in the excessive force used by Defendant Moore in throwing Kingcade to the floor at his residence. Kingcade also alleges that Defendants Trowbridge, Caldwell, Campbell, Gregory, and Moore are liable for failing to intervene in the excessive force used when Defendant Dennis tased Kingcade on the floor at the residence.

Defendants argue that, because Kingcade's underlying excessive force claims fail, he cannot maintain his failure to intervene claims.

Correctional officers can be liable for a failure to intervene and protect a detainee if they observe the use of excessive force, and had an opportunity to intervene and stop it, but unreasonably failed to do so. *Krout v. Goemmer,* 583 F.3d 557, 566 (8th Cir. 2009).

In this case, the Court has found that Kingcade's excessive force claims are barred by *Heck* due to Kingcade's conviction for resisting arrest. Kingcade's claims regarding failure to

intervene fail as he cannot show that Defendants used excessive force. Thus, Defendants are entitled to judgment as a matter of law on Kingcade's failure to intervene claims.

D. **Illegal Search and Seizure**

Kingcade claims that Defendants illegally searched his residence, garage, and car, and illegally seized pork steaks from his residence.

Defendants first argue that Kingcade's girlfriend, Jessica Gordon, who lived at the residence at that time, gave the officers consent to enter the residence. *See U.S. v. Jenkins,* 92 F.3d 430, 436 (1996) ("When one person consents to a search of property owned by another, the consent is valid if 'the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'") (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188 (1990). Defendants maintain that Gordon provided express consent to Defendant Moore for the officers to search the residence. Defendants cite to an authenticated copy of the Kennett Police Report, in which Defendant Campbell relays that Gordon stated to Moore that "she did not know anything about Mr. Kingcade stealing anything from Country Mart, and at that time, gave consent to search the residence for Mr. Kingcade." (Doc. 51-5 at 3.) Kingcade, however, argues that Gordon did not consent to the search of the residence, and has submitted a signed statement of Jessica Gordon. (Doc. 9-2.) In her statement, Gordon states that she discovered officers in her garage looking in Kingcade's vehicle. *Id.* Gordon states that one of the officers asked her if they could search the residence for Kingcade, and that she told him it was not her house so she could not give him permission to search it. *Id.* Gordon states that the officers then entered the residence. *Id.* Because these material facts are in dispute, Defendants are not entitled to summary judgment based on their consent argument.

Although the parties dispute whether consent to search the residence was given, none of the

parties discuss the fact that Kingcade's initial receipt to the ERDC was as a result of the revocation of his parole (Doc. 46 at 42; Doc.51-1 at 15, Kingcade's deposition testimony at 57) and not his new criminal conduct from August 7, 2014. The record supports that Defendant Dennis was aware that there was an outstanding parole violation warrant for Kingcade on August 7, 2014, as dispatch confirmed they had a hard copy of the felony warrant from the Dunklin County Sheriff's Office when Defendant Dennis was en route to Kingcade's residence. (Doc. 51-5 at 25.) The law is well established that a valid arrest warrant carries with it the authority to enter a dwelling in which a suspect lives if there is reason to believe that the person named in the warrant is then residing inside the dwelling. *Payton v. New York*, 445 U.S. 573, 603 (1980). Under these facts, the entry of the Defendants into Kingcade's residence to arrest him was lawful and the Defendants are entitled to summary judgment on Kingcade's illegal search and seizure claim.

To the extent Kingcade's allegation that the officers' unlawful seizure of the pork steaks challenges the validity of his conviction for felony Stealing, this ground of Kingcade's § 1983 claim is *Heck* barred. If this Court were to find in favor of Kingcade and agree that the Defendants here unlawfully seized the pork steaks from his car and kitchen that would necessarily imply the invalidity of Kingcade's conviction for Stealing. *Heck* prohibits the undersigned from entertaining this sort of collateral attack on Kingcade's State conviction. *Heck*, 512 U.S. at 484-85.

**V.**     **Kingcade's Motions**

Kingcade has filed a Motion to Appoint Counsel (Doc. 58) and a Motion to Subpoena X-rays (Doc. 59). These motions will be denied.

The appointment of counsel in a civil case is governed by 28 U.S.C. § 1915 (d). It is within the district court's sound discretion whether to appoint counsel for those who cannot pay for

an attorney under this provision.  *See In re Lane*, 801 F.2d 1040, 1044 (8th Cir. 1986).

In determining whether a person who is indigent should be appointed counsel, the court should ascertain "whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel."  *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984).   In addition, the court should consider the factual complexity, the plaintiff's ability to investigate facts, the existence of conflicting testimony, the plaintiff's ability to present her claim, and the complexity of the legal issues.  *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991), *cert. denied*, 504 U.S. 930, 112 S. Ct. 1995, 118 L.Ed.2d 591 (1992).

In his Motion to Appoint Counsel, Kingcade argues that he requires counsel because he has a tenth grade education and has difficulty speaking.  The Court finds that Kingcade has clearly presented his claims against Defendants, and that it does not appear that "plaintiff as well as the court will benefit from the assistance of counsel."  Despite Kingcade's claims to the contrary, he has adequately presented his issues to the Court, and has filed the appropriate motions and responses.  It is, therefore, not necessary that counsel be appointed.

In his Motion to Subpoena, Kingcade requests that the Court help him obtain records of x-rays he underwent to support his deliberate indifference to serious medical needs claim.  Kingcade cites to medical records he has submitted, which indicate x-rays of his cervical spine were taken at Farmington Correctional Center in September 2015.  (Doc. 46 at 37.)  The fact that Kingcade underwent x-rays of his cervical spine in September 2015 is not relevant to his deliberate indifference to serious medical needs claim related to injuries allegedly sustained in his August 2014 arrest.  Further, the Court has found that Kingcade's deliberate indifference to serious

medical needs claim fails as Kingcade received appropriate treatment from a nurse on the same day as his arrest. Thus, Kingcade's Motion will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 49) is **granted.** A separate Judgment in favor of Defendants will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Kingcade's pending Motions (Docs. 58, 59) are **denied**.

/s/ Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of June, 2016.