UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| FOREST CONAN KINGCADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15 CV 24 ACL |
| | ) | |
| TIM TROWBRIDGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Forest Conan Kingcade filed this action against Defendants Tim Trowbridge, Phillip Caldwell, Mark Dennis, Allan Campbell, Brandon Moore, and Stephen Gregory, alleging violations of his constitutional rights under 42 U.S.C. § 1983. This matter is before the Court on the parties' Supplemental Motions for Summary Judgment. (Docs. 87, 92.)

## Background

The Second Amended Complaint alleges that, on August 7, 2014, Defendants Moore, Trowbridge, Campbell, Gregory, Caldwell, and Dennis entered Kingcade's home without a search warrant in response to a shoplifting incident at the Town and Country Grocery Store in Kennett, Missouri. (Doc. 28 at 5.) Kingcade claims that he was ordered to the ground, and complied with this directive. *Id.* He states that, after he was handcuffed, Moore shoved him to the floor, and Dennis used his taser on the lower part of his thigh for a period of sixty seconds or more. *Id.* at 6. Kingcade states that Trowbridge and Caldwell stood by and watched the incident. *Id.* Kingcade alleges that, upon arrival at the Dunklin County Jail, Campbell tased him while he was securely detained. *Id.*

1

Defendants filed a Motion for Summary Judgment, in which they argued they were entitled to judgment on all of Kingcade's claims. They first claimed that Kingcade's excessive force and failure to intervene claims were barred by the application of *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants further argued that they were entitled to summary judgment on these claims based on collateral estoppel and qualified immunity. They claimed that Kingcade's deliberate indifference to medical needs and illegal search and seizure claims failed on the merits. This Court granted Defendants' Motion for Summary Judgment on June 6, 2016, and entered judgment in favor of Defendants on Kingcade's Second Amended Complaint. (Doc. 63.) The Court found that *Heck* barred Kingcade's excessive force and failure to intervene claims. Because this finding was dispositive, the Court did not address Defendants' additional arguments in support of summary judgment regarding these claims. The Court found that Kingcade's deliberate indifference and illegal search and seizure claims failed as a matter of law.

On February 27, 2017, the United States Court of Appeals for the Eighth Circuit issued an opinion and judgment affirming in part and reversing in part this Court's grant of Defendants' Motion for Summary Judgment. *Kingcade v. Trowbridge, et al.*, 678 Fed.Appx. 452 (8th Cir. 2017) (unpublished). The Court affirmed the grant of summary judgment as to Kingcade's claims of deliberate indifference, but reversed the grant of summary judgment as to Kingcade's claims of excessive force and failure to intervene.[1] The Eighth Circuit remanded the matter to this Court for further proceedings consistent with its opinion.

Following the Eighth Circuit's opinion, this Court gave the parties an opportunity to file supplemental dispositive motions. The parties filed the Supplemental Motions for Summary

---

[1] Kingcade did not appeal this Court's decision regarding his illegal search and seizure claim, and the Eighth Circuit found that Kingcade affirmatively waived that claim.

Judgment, which are currently before the Court.

**I.        Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co.*., 475 U.S. at 587).

## II. Facts[2]

On August 7, 2014, Kennett Police Officers responded to a residence in Kennett, Missouri, at which the officers located and arrested Plaintiff Forest Conan Kingcade based on a felony warrant and probable cause that he committed various offenses including theft (shoplifting) and operating a vehicle without a license.

During his arrest, Kingcade complied with the officers' initial commands. He was placed in handcuffs without incident. The parties disagree about what caused Kingcade to fall to the ground after he was handcuffed. Kingcade claims that Officer Moore threw him to the ground for no reason. The officers contend that Kingcade fell as Officer Moore attempted to escort him out of the house.

Kingcade also claims that once he was lifted to his feet after being handcuffed, his boxers fell down, and he asked Officer Moore to help him pull the boxers up. The officers, on the other hand, indicate that when they denied Kingcade's request to put pants on over his boxers, Kingcade pulled his boxer shorts down and said he would go naked. (Doc. 93-1 at 1, 7, 8.) Kingcade and his girlfriend, Jessica Gordon, state that Kingcade's hands were cuffed behind his back when his boxers fell down. Gordon also claims that she asked the officers for permission to pull Kingcade's boxers up and they denied her offer to help. *Id*. at 5.

---

[2] The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in his Response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

4

Officers eventually got Kingcade out of the residence and placed him in a patrol vehicle to transport him to the Dunklin County Justice Center. Kingcade argued with the officers and was verbally abusive to the officer during the ride from his residence to the jail.

Upon arrival at the jail, jailers and officers had to carry Kingcade from the police car to the jail booking room. While at the jail, Kingcade continued to curse and threaten officers. The officers claim that Kingcade's behavior was so combative upon arrival to the jail and in the booking room that the officers had to carry him into a holding cell. Kingcade claims that he had to be carried into the jail because his body had locked up in response to being tased at his residence and that the back of his thigh was injured from the taser prongs.

Officers used a taser on Kingcade on two different occasions. First, Officer Dennis used his taser on Kingcade at Kingcade's residence. After the taser was deployed, Kingcade complied with the officers' commands and he was placed in a patrol car for transport to the jail. Kingcade claims he asked for and was denied medical assistance. Following Kingcade's arrival at the jail, Corporal Alan Campbell administered his taser on Kingcade in "dry-stun" mode.

During Kingcade's intake at the Eastern Reception, Diagnostic, and Correctional Center at Bonne Terre more than two months after his arrest, Kingcade reported that he did not have an arrest injury or related medical problem. (Doc. 89-4 at 6.) Kingcade requested that photographs be taken of his wrists (Doc. 51-1 at 9) on August 7, 2014, *id*. at 19-20, and again on August 13, 2014, *id*. at 21-22. Kingcade did not ask for photographs to be taken of his thigh. *Id*. at 9.

On January 16, 2015, Kingcade pled guilty to the class D felony of resisting an arrest in violation of Mo. Rev. Stat. § 575.150. The charge to which Kingcade pled guilty stated that "on or about August 7, 2014, in the county of Dunklin, State of Missouri, Alan Campbell a law

enforcement officer, was attempting to arrest defendant for the felony [of] stealing and [Kingcade] resisted arrest by *threatening* physical force or violence." (Doc. 89-5 at 7, emphasis added.)

## II. Discussion

As an initial matter, the Court notes that, although Kingcade titles his pleading "Supplemental Motion," he does not request that the Court enter judgment in his favor. Instead, Kingcade requests that this Court "proceed on Count I. Excessive Force and Count III. Failure to Intervene claims for trial." (Doc. 92 at 2.) Contemporaneous with this Supplemental Motion, Kingcade filed a "Memorandum of the Plaintiff Forest Conan Kingcade in Support of his Supplemental Motion for the Appeal Court Judges Did Not Err Judgment by Remanded Count I. Excessive Force and III. Failure to Intervene of his Claims" (Doc. 93), along with exhibits in support (Doc. 93-1); and "Affidavits of Uncontroverted Material Facts in Support of the Plaintiff's Supplemental Motion, that the Appeal Court Judges (per curiam) Did Not Err" (Doc. 94).

Defendants have filed a Motion to Strike Plaintiff's "Supplemental Motion," in which they argue that the Court should strike the Supplemental Motion and its supporting documents because they fail to state a proper basis for summary judgment and because they are untimely. (Doc. 97.) Defendants state that, to the extent the Court accepts Kingcade's Supplemental Motion, they re-allege, readopt, and incorporate by reference Defendants' Supplemental Motion for Summary Judgment. (Doc. 87.)

Defendants' Motion to Strike will be denied. Although Kingcade's Supplemental Motion was filed two days after the deadline set forth in the Court's March 30, 2017 Order, Defendants are not prejudiced by this delay. The record shows that Kingcade has been diligently pursuing his

claims in this action. He has filed multiple pleadings, including a motion for assistance of counsel, following the Eighth Circuit's opinion.

The Court broadly construes and affords a liberal construction to *pro se* pleadings. *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010). Because Kingcade does not request that judgment be entered in his favor but, instead requests that his remaining claims proceed to trial, the Court will construe his Supplemental Motion as a Response in Opposition to Defendants' Supplemental Motion for Summary Judgment. Kingcade's additional pleadings filed in connection with his Response will also be considered in determining whether Defendants are entitled to summary judgment.

### A. Excessive Use of Force

Kingcade alleges three instances of excessive use of force associated with his arrest: (1) when Defendant Moore threw Kingcade to the floor of his residence while Kingcade was handcuffed; (2) when Defendant Dennis tased Kingcade while he was on the floor of the residence; and (3) when Defendant Campbell tased Plaintiff upon arrival at the Dunklin County Jail. (Doc. 28 at 6; Doc. 51-1 at 13-14.)

The Eighth Circuit held that Kingcade's excessive force and related failure-to-intervene claims were not barred by *Heck*. *Kingcade v. Trowbridge et al.*, 678 Fed.Appx. 452 (8th Cir. 2017) (unpublished). The Eighth Circuit explained that in *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1007 (8th Cir. 2014), it was held that a "state court's determination that [an] individual resisted arrest may coexist with finding that officers used excessive force to subdue him." *Kingcade*, 678 Fed. Appx. at 452-53. *See also Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (The jury is free to. . .believe that [plaintiff] was nonetheless punched at a time when he

was not resisting. Under that version of facts. . .there is no Heck bar."); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (Were we to uphold the application of Heck in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.").

Because this Court did not reach Defendants' collateral estoppel or qualified immunity arguments, those questions were not before the Eighth Circuit. Defendants now renew those arguments in their Supplemental Motion for Summary Judgment.

### 1. **Collateral Estoppel**

In § 1983 litigation, the Supreme Court has noted that the preclusive "effect of state-court decisions in § 1983 actions is a matter of state law." *Heck*, 512 U.S. at 480 n. 2. In accordance with *Heck*, the Missouri Supreme Court has held that a defendant's prior guilty plea can be used to collaterally estop the defendant from asserting contrary arguments in subsequent civil litigation. *See James v. Paul*, 49 S.W.3d 678, 682-88 (Mo. banc 2001) ("Applying collateral estoppel in this situation serves to prevent the potential of collusive litigation as well as promoting the other policies of finality, consistency and judicial economy.").

Before giving preclusive effect to a prior adjudication under collateral estoppel principles, a court must consider four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Id.* at 682-83.

The first factor is dispositive in this case. Much like the reasoning the Eighth Circuit applied in finding Kingcade's claims were not *Heck*-barred, the issue presented in the state court adjudication is distinct from the claims at hand. Kingcade pled guilty to resisting arrest by threatening physical force or violence when Campbell (an officer who was present at Kingcade's residence during the arrest and the officer who tased Kingcade at the jail) was attempting to arrest him. In addition to Kingcade being estopped from arguing in this action that he did not resist his arrest on August 7, 2014, he does not deny making verbally abusive remarks to Campbell after they left the residence, which are consistent with verbal threats. He claims that Moore and Dennis applied excessive force at Kingcade's residence before the resisting arrest incident involving Campbell occurred. Specifically, he argues that he was secured and complying with officers' requests when Moore brought him to the floor, and then Dennis tased him three times. Kingcade further alleges that Campbell's use of the taser at the jail constituted excessive force because Kingcade was restrained and posed no physical threat at the time.

For the purposes of a § 1983 excessive force claim, the issue is whether the force employed by the defendants in arresting the plaintiff was "objectively unreasonable under the particular circumstances" in violation of the Fourth Amendment. *Crumley v. City of St. Paul,* 324 F.3d 1003, 1007 (8th Cir. 2003).

The issues raised in this action are not identical to those adjudicated in state court. Whether the amount of force applied on the three separate occasions to effectuate Kingcade's arrest was *excessive* in light of the specific facts of this case are issues that were not decided in state court. The Court thus concludes that collateral estoppel does not apply to Kingcade's claims.

## 2. Qualified Immunity

"Qualified immunity is a defense available to government officials if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Amrine v. Brooks*, 522 F.3d 823, 831 (8th Cir. 2008) (quoting *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007)). It "allows officers to make reasonable errors so that they do not always err on the side of caution" for fear of being sued. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (internal quotation omitted); *see Davis v. Scherer*, 468 U.S. 183, 196 (1984). "This defense provides 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law." *Amrine*, 522 F.3d at 831 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Qualified immunity determinations are based on a two-part inquiry. First, the court determines whether the alleged facts, viewed in the light most favorable to the injured party, demonstrate that the official's conduct violated a constitutional right. *Amrine*, 522 F.3d at 831. Second, if the answer to that inquiry is yes, the court asks whether the constitutional right was clearly established at the time so that a reasonable officer would have understood that his conduct violated that right. *Id*.

### i. Constitutional Right

The Fourth Amendment to the United States Constitution prohibits the use of excessive force during the seizure of a free citizen. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). Fourth Amendment excessive force standards are also applied to incidents "occurring during the transportation, booking, and initial detention of recently arrested persons." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011). *See also Hicks v.*

*Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process").

"A use of force is unlawful under the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances confronting law enforcement officers at the time of the incident." *Procknow v. Curry*, No. 15-2046, 2016 WL 3383776, at *3 (8th Cir. June 20, 2016) (citing *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This calculus allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). "A court may also evaluate the extent of the suspect's injuries, as well as standard police procedures." *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) (internal citations omitted); *see Chambers*, 641 F.3d at 906 ("The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used."). An officer's underlying intent or motivation is not relevant to an objective reasonableness analysis. *Graham*, 490 U.S. at 397.

Defendants first argue that, by virtue of Kingcade's guilty pleas, they are entitled to

qualified immunity from Kingcade's excessive force claims. The remainder of their argument is set forth below:

> Even without the guilty pleas, however, it was objectively reasonable for Defendant Moore to use force to put Plaintiff to the floor at the residence, and it was similarly reasonable for Defendant Dennis to activate his taser to further stop Plaintiff from resisting arrest. The same is true for Defendant Campbell's use of the taser at the Dunklin County jail when Plaintiff continued to resist prior to the completion of the booking process. Each of these officers was forced to make a split-second judgment on how quickly and effectively to restrain Plaintiff so that he did not injure other officers or himself. As the use of force by each of these officers was objectively reasonable, there is no constitutional violation and the officers are entitled to qualified immunity for their actions.

(Doc. 88 at 6-7.)

Kingcade responds that Defendants are not entitled to qualified immunity because the force used by Defendants in each of the three incidents violated the Fourth Amendment. (Doc. 93.) Kingcade contends that the force cannot be justified because he was not a flight risk as he was handcuffed, the offense for which he was being held was misdemeanor theft, and there were six officers and a K9 present at his residence.

In support of his Response in opposition to Defendants' Motion for Summary Judgment, Kingcade submitted the statements of Defendants and Gordon, which he contends support his version of the facts. (Doc. 93-1 at 1-8.) He has also submitted data from the taser used by Dennis, showing that the taser was activated at least three times on the day in question. (*Id.* at 9-20.) The crux of Kingcade's excessive use of force claim against Dennis is that Dennis' three activations of the taser amounted to a Fourth Amendment violation.

Defendants, in their Response to Kingcade's "Affidavits of Uncontroverted Material Facts," admit that Kingcade complied when he was directed to the ground at the residence, but claim that he began to resist arrest after he was secured. (Doc. 96 at 3.) The Defendants

12

admitted "that in the course of the arrest, it was necessary for officers to use a taser and den[ied] all remaining factual allegations."  *Id.* at 4.   Defendants failed to squarely address the reasonableness of the three separate activations of the taser in a one minute time-frame.

A question of fact exists regarding whether the use of force in each instance was reasonable under the circumstances.   Officers responded to Kingcade's residence due to a felony warrant for an unspecified parole violation, and probable cause that he committed misdemeanor theft by stealing pork steaks at a grocery store.  There is no indication in the record that Kingcade was suspected of any type of violence in connection with either the theft or the felony warrant. Kingcade admits to verbal abuse of Campbell after Campbell allegedly provoked Kingcade in the patrol vehicle on the way to the jail, but denies ever physically resisting arrest.

A threat to an officer's safety can justify the use of force in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee.  *See, e.g.,Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (officer's deploying of pepper spray on driver pulled over for speeding not excessive force when driver refused officer's orders to get out of his vehicle to sign the citation and began to roll window up onto the officer's arm, due to officer's reasonable fear of being dragged down the road with his arm trapped); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (officer's use of taser not excessive force when officer stopped tractor trailer for traffic violation late at night; driver was pacing behind his truck, was belligerent, and refused to comply with commands; and officer was the only officer on the scene).  *But see Brown v. City of Golden Valley*, 574 F.3d 491, 498 (8th Cir. 2009) (genuine issue of fact as to whether officer used excessive force when he used taser on passenger of vehicle

stopped for traffic violation after passenger called "911" and did not follow officers' commands to get off phone because she was frightened by officers' aggressive conduct).

Viewing the facts in the light most favorable to Kingcade:

1) Moore threw Kingcade to the floor when his hands were already cuffed behind his back in the presence of six officers and a canine, and was not resisting arrest;

2) Dennis activated the taser three separate times for multiple seconds at a time when Kingcade was handcuffed, with his pants down to his ankles, and not resisting arrest; and

3) Campbell used the taser in dry-stun mode on Kingcade while he was in custody at the jail, still recovering from the effects of the previous use of the taser, in response to Kingcade's verbal threats.

The statement of Jessica Gordon corroborates Kingcade's version of the events that occurred at the residence. (Doc. 93-1 at 3-6.) Kingcade has also submitted data from the taser used by Dennis, showing that the taser was activated three times within a minute, for approximately five seconds at a time. (Doc. 93-1 at 20.) Defendants do not address the taser report. In his "Supplementary Report: Use of Taser & K-9 2014-Aug-7" submitted by Kingcade, Dennis states as follows, in relevant part:

> Ptm. Moore then began struggling with Kingcade during which Kingcade fell to the ground while trying to pull away from Ptm. Moore. Due to the close proximity of K-9 Midas and K-9 Midas becoming more and more agitated as Kingcade struggled with Ptm. Moore, I decided to utilize my TASER device in an attempt to control him and in an attempt to subdue him without him being bitten by K-9 Midas. The TASER device worked as expected and both prongs struck Kingcade in his upper thigh area causing full neuro-muscular incapacitation and allowing Ptm. Moore to gain control.

(Doc. 93-1 at 7.)

In an Affidavit, Dennis stated that Kingcade refused to calm down or comply with officers' demands and that to prevent further injury to Kingcade and his fellow officers, Dennis used his taser to subdue Kingcade. (Doc. 89-1 at 2.) Dennis' report and Affidavit are silent as to how many times the taser was activated. Dennis' Affidavit provided that he used the amount of force he believed was necessary based on Kingcade's active resistance to being arrested. *Id*. at 2. Defendants do not address the taser data submitted by Kingcade or provide any more information regarding the usage of the taser. Considering the undisputed facts that Kingcade was handcuffed with his pants down to his ankles and surrounded by multiple law enforcement officers and an agitated canine, the Court cannot determine whether Dennis' usage of the taser was reasonable.

In addition, while Kingcade's claimed injuries of lacerations on his wrists from the handcuffs and an injury to his thigh could be considered *de minimis,* this no longer forecloses his claims. *Chambers,* 641 F.3d at 906.

Because of these disputes, Kingcade has generated genuine issues of material fact concerning whether the force used on him was gratuitous. *See Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009) (discussing the use of gratuitous force on a suspect who was handcuffed, not resisting, and fully subdued), and these determinations are properly left to the jury in this case. *See Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### ii. Clearly Established

When Kingcade was arrested in August 2014, the law in the Eighth Circuit was clearly established that a police officer's use of excessive force in effecting an arrest violates the Fourth Amendment. *See Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002) (right to be free from excessive force clearly established; genuine issue of fact precluded summary judgment when

15

defendant police officer twisted plaintiff's arm, causing injury to his collar bone, shoulder, neck and wrist under circumstances indicating that plaintiff was not resisting arrest).

Defendants contend that Kingcade's claims against Dennis and Campbell fail under the second prong of the qualified immunity analysis because the law on the use of tasers was not yet clearly established at the time the alleged incident occurred.[3]

It is true that the Eighth Circuit has "yet to determine whether a violent subject, acting aggressively toward officers, has a clearly established right to be free from multiple tasings." *De Boise v. Taser Intern., Inc.*, 760 F.3d 892, 897 (8th Cir. 2014), citing *Brown*, 574 F.3d at 499-500. The law was, however, established that "non-violent, non-fleeing subjects have a clearly established right to be free from the use of tasers." *Id.* In *De Boise,* officers tased an arrestee multiple times when he aggressively approached one of the officers, continued to not comply with the officers' instructions to lie on the ground, and kicked and swung his arms at the officers once they approached to subdue him. *Id.* at 897. The Court held that "no reasonable officer, observing De Boise's behavior, would have understood the actions taken to be so disproportionate and unnecessary as to amount to a violation of De Boise's rights." *Id.* at 897-98.

The facts of this case are distinguishable from those of *De Boise*. Kingcade was already handcuffed and in the presence of six officers when he was tased multiple times. If Kingcade was not physically resisting arrest after being handcuffed, as he alleges, then he had a "clearly established right to be free from the use of tasers." *Id.* at 987. Whether Kingcade was physically

---

[3] Defendants further argue that the recent Eighth Circuit decision of *Zubrod v. Hock* demonstrates that the law on the use of tasers remained undefined. The Court notes that *Zubrod v. Hock*, 232 F. Supp.3d 1076 (N.D. Iowa 2017) is a district court opinion from the Northern District of Iowa. Although the decision has been appealed to the Eighth Circuit, the Court has not yet issued its decision.

resisting arrest at the time he was tased and the extent of his resistance is an issue for the jury to determine. *See Moore v. City of Ferguson, Mo.*, 213 F.Supp.3d 1138, 1145 (E.D.Mo. 2016) (defendant officers not entitled to qualified immunity under *De Boise* when taser data raised question whether arrestee had a reasonable amount of time between tasing cycles to comply with officer's commands). *See e.g., Van Raden v. Larsen*, No. 13-2283 (DWF/LIB), 2015 WL 853592, at *7 (D.Minn. Feb. 2015) (addressing qualified immunity and the reasonable use of a taser). Thus, Defendants have not demonstrated their entitlement to qualified immunity on Kingcade's excessive force claims.

**B.     Failure to Intervene**

Kingcade alleges in Count III of the Second Amended Complaint that Defendants Trowbridge, Caldwell, Campbell, Dennis, and Gregory are liable for failing to intervene in the excessive force used by Defendant Moore in throwing Kingcade to the floor at the residence. He also alleges that Defendants Trowbridge, Caldwell, Campbell, Gregory, and Moore are liable for failing to intervene in the excessive force used when Dennis tased Kingcade at the residence.

Correctional officers can be liable for a failure to intervene and protect a detainee if they observe the use of excessive force, and had an opportunity to intervene and stop it, but unreasonably failed to do so. *Krout*, 583 F.3d at 566. Police officers have a duty "to intervene to prevent the excessive use of force—where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Id*. at 565.

Defendants argue that Kingcade's guilty pleas to stealing pork steaks and resisting arrest prevent him from asserting an excessive force constitutional violation due to the application of qualified immunity and collateral estoppel. They contend that, "as there is no underlying

17

constitutional violation for excessive force, the failure to intervene claims cannot be maintained." (Doc. 88 at 9.) Defendants do not address the merits of Kingcade's failure to intervene claims.

Because the Court has found that genuine issues of fact exist regarding whether Defendants applied excessive force Defendants' argument necessarily fails. The Court therefore denies summary judgment on Kingcade's failure to intervene claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike (Doc. 97) is **denied.**

**IT IS FURTHER ORDERED** that the Supplemental Motion of Defendants Tim Trowbridge, Philip Caldwell, Mark Dennis, Allan Campbell, Brandon Moore, and Stephen Gregory for Summary Judgment (Doc. 87) is **denied**.

**IT IS FURTHER ORDERED** that this matter will be set for trial after a telephone conference with the parties is held on a date to be determined.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of September, 2017.